UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CODY KINDERMAN, on behalf of himself
and all other Plaintiffs similarly situated,
known and unknown,

          Plaintiffs,

v.

AUTO SYSTEM CENTERS, INC., et al.,

          Defendants.

Case No. 3:20-cv-01749

MAGISTRATE JUDGE DARRELL A. CLAY

### ORDER GRANTING THE
### PARTIES' JOINT MOTION FOR APPROVAL OF SETTLEMENT AND
### FOR APPROVAL OF SERVICE PAYMENT AND ATTORNEY'S FEES AND COSTS

Currently pending before me is the Parties' Joint Motion for Approval of Settlement and for Approval of Service Payment and Attorney's Fees and Costs (Joint Motion).  For the reasons that follow, the proposed Settlement is APPROVED and the Joint Motion is GRANTED as set forth herein.

**The Settlement Is Approved**

1.      The Court approves and incorporates by reference all of the definitions contained in the Collective Action Settlement Agreement and Release. The Court hereby approves the Three Hundred Fifty Thousand and No/100 ($350,000.00) collective action settlement.

2.      A district court should approve a Fair Labor Standards Act ("FLSA") collective action settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a bona fide dispute between the parties. *Osman v. Grube*, No. 3:16-cv-802, 2018 WL 2095172, *1 (N.D. Ohio 2018) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350,

2

1355 (11th Cir. 1982) (citations omitted)). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Briggs v. PNC Financial Servs. Group*, No. 1:15-cv-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016). "In general, the settlement of complex litigation before trial is favored by federal courts." *Eicheholtz v Brennan*, 52 F.3d 478, 486 (3rd Cir. 1995).

3.      The settlement reached here was the result of arms-length negotiations and surpasses the standard for approval.  First, there is no doubt that the settlement was the result of vigorously contested litigation. The case was actively litigated by the Parties and required settlement negotiations spanning more than eight months to resolve. The "contested litigation" prong is easily satisfied.

4.      The second prong of the Court's settlement approval inquiry, whether the settlement is a fair and reasonable resolution of a bona fide dispute between the parties, is also satisfied.

5.      To determine whether a settlement is "fair and reasonable," courts often analyze the following factors: (1) whether the parties fairly and honestly negotiated the settlement; (2) if serious questions of law and fact existed that placed the ultimate outcome of the litigation in doubt; (3) does the value of immediate settlement outweighs the mere possibility of future relief after protracted litigation; and (4) in the judgment of the parties, is the settlement is fair and reasonable. *Osman*, 2018 WL 2018 WL 2095172, *1 (citing *Cannon v. Time Warner NY Cable LLC*, 2015 WL 4498808 (D. Colo. July 24, 2015)).  Given the number of complex and uncertain legal and factual issues in this matter, the settlement amount of $350,000 is substantial.  Moreover, Defendants would likely argue for decertification of the FLSA collective based on the differences among various employees.  Plaintiff and the Collective Members also faced risk as to Defendants'

3

argument that they did not have an actual policy of making deductions prohibited by the FLSA.  If Defendants were to prevail on that argument, Plaintiff and the Collective Members would receive nothing.  It is a risk that Plaintiff and the Collective Members would face both on summary judgment, and then again at trial.  For these reasons as well as those detailed in the Joint Motion's Memorandum in Support, each of these factors is satisfied.

**The Settlement Procedure Is Approved**

6.      A one-step settlement approval process in FLSA collective actions is appropriate. *See, e.g., Stokes v. Consol. Wings Inv., LLC*, No. 15-cv-01932-RLY-DKL (S.D. Ind.), ECF No. 61 (approving FLSA collective action settlement in one step); *Briggs v. PNC Fin. Servs. Group, Inc.*, No. 15-cv-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) (citing *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) ("'A one-step settlement approval process is appropriate[]'" in FLSA settlements.)). Collective actions under 29 U.S.C. § 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions).

7.      The Court finds that the method of distribution is reasonable and therefore approved. Each Claimant will receive his or her *pro rata* share of the Net Settlement Fund based on their number of weeks worked within the applicable period.  Courts approve *pro rata*

distributions of settlement awards.  *See Summers v. UAL Corp. ESOP Comm.*, No. 03 Civ 1537, 2005 WL 3159450, at \*2 (N.D. Ill. Nov. 22, 2005) (approving allocation plan as reasonable when "settlement funds…will be disbursed on a pro rata basis").

8.      The Court further finds that the Parties' proposed Notice of Settlement is reasonable and approved.  The proposed Notice of Settlement sufficiently informs Eligible Settlement Participants of the general terms of the Settlement, including how they may participate, the settlement payment to which they are entitled, the scope of the release, and the attorneys' fee award. *Koszyk*, 2016 WL 5109196, at \*2 (approving class notice that, *inter alia*, described settlement terms and fee allocation); *Zolkos v. Scriptfleet, Inc.*, 2014 WL 7011819, at \*6 (N.D. Ill. Dec. 6, 12, 2014).  Moreover, Eligible Settlement Participants who do not timely submit their Claim Form or cash their Settlement Checks will not release any claims.

**The Service Award Is Approved**

9.      "Numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class."  *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *accord Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at \*7 (N.D. Ohio March 8, 2010); *see also Sand v. Greenberg*, 2011 WL 784602, at \*3 (S.D.N.Y. Oct. 6, 2011) (approving service award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting").  *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at \*7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

5

10.     In this case, Named Plaintiff worked diligently to protect and advocate on behalf of the Eligible Settlement Participants, which contributed significantly to the settlement of the Lawsuit as his participation removed a significant hurdle to certification.  As a result, Defendants are willing to pay $350,000.00 to satisfy the claims of the Eligible Settlement Participants.  Named Plaintiff's actions obviously achieved substantial financial benefits for his similarly situated colleagues—money they would not have received if Named Plaintiff had not commenced the Lawsuit.  Additionally, Named Plaintiff will be providing the Defendants with a general release in consideration for this Service Award.

11.     For the foregoing reasons, a Service Award of Seventy-Five Hundred Dollars ($7,500.00) is approved for Named Plaintiff.

### Fees and Costs of the Plaintiffs' Attorneys Are Approved

12.     Plaintiffs' counsel seeks as their attorneys' fees one-third of the common settlement fund. Courts within the Sixth Circuit have utilized two methods for determining whether a requested fee is reasonable: the lodestar method and the percentage-of-the-fund method.  *Rawlings v. Prudential Bache Prop., Inc.*, 9 F. 3d 513, 515-16 (6th Cir. 1993).  The percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share (*i.e.*, a 'common fund')."  *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010).

13.     In this case, applying the percentage-of-the-fund method is prescribed by contract between each plaintiff and their counsel.  Using the percentage-of-the-fund method is also consistent with the practice in the private marketplace (especially in wage and hour cases) where attorneys are retained on a contingency fee basis and customarily compensated with a percentage of the recovery.  The percentage-of-the-fund method is also preferred over the lodestar method

because it more closely aligns the attorneys' interest in being paid a fair fee with the interest of the

class in achieving the maximum possible recovery in the shortest amount of time.  By ensuring the

interests of the collective and its counsel are aligned, the percentage-of-the-fund method provides

a powerful incentive for the efficient prosecution and early resolution of litigation.  *Wells v.*

*Allstate Ins. Co.*, 557 F. Supp. 2d 1, 6 (D.D.C. 2008) (internal citation omitted).

14.      Courts within the Sixth Circuit routinely approve attorney fees of one-third of a

gross settlement fund or more. *See e.g. Osman*, 2018 WL 2095172, *3; *Thorn v. Bob Evans Farms,*

*Inc.*, No. 2:12-cv-00768, 2016 WL 8140448 (N.D. Ohio 2016); *Swigart v. Fifth Third Bank*, No.

1:11-cv-88, 2014 U.S. Dist. LEXIS 94450 (S.D. Ohio 2014); *Rotuna v. W. Customer Mgmt. Grp.,*

*LLC*, No. 4:09-cv-1608, 2010 WL 2490989 (N.D. Ohio 2010); *Applegate-Walton v. Olan Mills,*

*Inc.*, No. 3:10-cv-00224, 2010 U.S. Dist. LEXIS 77965 (M.D. Tenn. 2010); *Dillworth v. Case*

*Farms Processing, Inc.,* No. 5:08-cv-1694 (N.D. Ohio 2009); *Jackson v. Papa John's*, No. 1:08-

cv-2791 (N.D. Ohio 2008); *Fincham v. Nestle Prepared Foods co.*, No. 1:08-cv-73 (N.D. Ohio

2008); *McGhee v. Allied Wast Indus.,* Case No. 1:07-cv-1110 (N.D. Ohio 2007); *Bessey v.*

*Packerland Plainwell, Inc.*, No. 4:06-cv-95, U.S. Dist. LEXIS 79606 (W.D. Mich. 2007). The

Court finds that the instant matter is sufficiently similar to other cases in which the courts have

awarded attorney fees of one-third of a gross settlement fund.

15.      In determining the reasonableness of the fee award, courts also consider the

following factors: (1) the value of the benefit rendered to the class (i.e., the results achieved); (2)

society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive

to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the

services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and

standing of counsel involved on both sides. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). These factors support the fee award.

16.     First, the results achieved by Plaintiff's counsel support their requested attorneys' fees. Here, there should be no doubt that the Settlement represents a tremendous benefit to the collective class.  The risks in continuing with the litigation included facing motions for summary judgment, motions for decertification, proving liability on behalf of Defendants at trial, and the uncertainty of the determination of damages by the trier of fact.  In contrast, "[t]he settlement provides relatively early relief to [collective action] members, and it eliminates the additional risks the parties would otherwise bear if this litigation were to continue." *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *6 (S.D. Ohio July 11, 2014).

17.     Second, "[a]dequate compensation is necessary to encourage attorneys to assume the risk of litigation in the public interest." *Connectivity Systems Inc. v. National City Bank*, 2011 WL 292008, *14 (S.D. Ohio Jan. 26, 2011) (internal citations omitted).  Because of their inherit risks, exemption misclassification claims are not particularly desirable cases for competent wage and hour attorneys.  For the attorneys, the probability of the case being time intensive is high while the overtime damages on an individual basis are relatively small and the prospects of adequate compensation are uncertain relative to other wage and hour claims. Approval of the fee requested helps to ensure that misclassified employees have adequate representation available to them when they believe their employers are taking advantage of them. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534 (E.D. Mich. 2003) (internal citations omitted) ("Society's stake in rewarding attorneys who can produce such benefits in complex litigation such as in the case at bar counsels in favor of a generous fee ").

8

18.     Third, Plaintiff's counsel took the case on a contingency basis, with no guarantee that they would be paid anything for their work. *See Sutton v. Bernard*, 504 F.3d 688, 693-94 (7th Cir. 2007) ("there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."); *see also Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (stating Plaintiff's Counsel "could have lost [and could still lose] everything invested").

19.     Fourth, the Court is satisfied with the value of the services of Plaintiff's counsel on an hourly basis. Plaintiff's counsel has devoted, and will continue to devote, substantial time to this matter. Plaintiff's counsel performed extensive research regarding the state of the FLSA's outside sales exemption in regard to the facts of this case, drafted a lengthy, in depth complaint based on multiple interviews of Named Plaintiff, engaged in lengthy back and forth negotiations with defense counsel regarding the course of the case both before and after mediation, spent dozens of hours reviewing records of payments and workweeks for Named Plaintiff and the Opt-In Plaintiffs to put together damages calculations, and travelled to Toledo to participate in a day long mediation. Plaintiff's counsel will continue to put in time to bring this matter to a close. The time that Plaintiff's counsel has and will continue to devote to this matter supports the requested award.

20.     Fifth, the complexity of the Lawsuit supports the award.  The Lawsuit involved multiple locations across different states and hundreds of store managers, most of whom have varying salaries, commissions, and bonuses and individualized deductions.

21.     Finally, the skill and professional standing of the attorneys supports the fee award because counsel have a history of regularly litigating complex FLSA cases.

**Plaintiff's counsel's Costs**

22.      Plaintiff's counsel's request for reimbursement of $6,079.65 in actual out-of pocket expenses incurred in prosecuting this case, including costs for filing and service fees, postage, and research fees is also granted. The Court finds these costs to be reasonably incurred.

**Settlement Administrator's Fees**

23.      The Court also approves the appointment of Optime Administration, LLC to administer the settlement and approves $7,000.00 for its fees in administering the Settlement.

**Post-Approval Procedure**

24.      Defendants Katz Midas Franchisees, Midas Auto Service Experts, and Midas Auto and Tire Experts are hereby dismissed from this matter with prejudice as requested in the Parties' Joint Motion.

25.      Within fourteen (14) days of the Opt-In Deadline, the Parties shall file a joint report as detailed in the Agreement.

26.      Within twenty (21) days of the Opt-In Deadline, the Parties shall file a stipulated notice of dismissal with prejudice as detailed in the Agreement.

27.      Following the dismissal of this matter with prejudice, the Court shall retain jurisdiction over this action only for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Agreement, including for overseeing the distribution of settlement funds.

28.      The Parties shall abide by all terms of the Agreement, which is incorporated herein, and this Order.

It is so ORDERED on this 15th day of _____August_____, 2022.

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

10